AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

United States of America
v.

BENJAMIN ANTHONY KRAMER

*Defendant(s)*

Case No. 8:26MJ499

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of between April 2025 to Nov 5, 2026 in the county of Douglas in the District of Nebraska, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. § 2252A(a)(5)(B) & (b)(2) | Possession of Child Pornography |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Barbara Robertson, SA, DSS

*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date: 11/5/2026

*Judge's signature*

City and state: Omaha, Nebraska

RYAN C. CARSON, U.S. Magistrate Judge

*Printed name and title*

SENSITIVE BUT UNCLASSIFIED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**BENJAMIN ANTHONY KRAMER,**<br>**Defendant** | **Case No. 8:26MJ499**<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Barbara F. Robertson, a Special Agent with the Diplomatic Security Service, being duly sworn, depose and state as follows:

**AFFIANT BACKGROUND**

1. I am a Special Agent with the United States Department of State Diplomatic Security Service (DSS), where I have served since 2023. As a Special Agent, I investigate violations of federal law, including complex passport and visa fraud, identity theft, transnational organized crime, human trafficking, child sexual abuse material (CSAM), and child pornography offenses encompassing production, distribution, receipt, and possession. I have completed extensive professional law enforcement training, including the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC), the DSS Basic Special Agent Course. Additionally, I am also a member of the Northern Virginia and District of Columbia Internet Crimes Against Children Task Force (ICAC) and have completed the Massachusetts Municipal Police Training Council Domestic Violence, Child Abuse, and Sexual Assault Investigator Course, which provided advanced training on the sexual abuse and exploitation of



SENSITIVE BUT UNCLASSIFIED

minors, and the National Children's Advocacy Center Forensic Interviewing of Children training. Prior to joining DSS, I served approximately eight years in the United States Marine Corps.

2. As a Diplomatic Security Special Agent, I derive law enforcement authority from 22 U.S.C. § 2709, which empowers me to investigate all violations within my jurisdiction, including those enumerated in paragraph 1 above. I am a federal law enforcement officer engaged in enforcing the criminal laws of the United States, including 18 U.S.C. §§ 2251 (sexual exploitation of children), 2252 (material involving the sexual exploitation of minors), 2252A (material containing child pornography), 2422 (coercion and enticement), and 2423 (transportation of minors).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, that statement is described in substance and is not intended to be a verbatim recitation of such statement.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Benjamin Anthony Kramer has engaged in violations of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (possession of or access with intent to view and attempted possession of or access with intent to view a visual depiction of a minor engaged in sexually explicit conduct).

## BACKGROUND INFORMATION AND TERMINOLOGY RELEVANT TO INVESTIGATION

***PayPal***

6. PayPal is a financial service application in the United States. An individual can access PayPal through a web browser or through an application installed on a compatible mobile device. Users can set up a PayPal Balance account. A PayPal Balance account is a place to receive money, hold money, convert money from one currency to another, withdraw money from a user's Balance Account to a debit card or bank account linked to the user's personal account, transfer money for purchases of goods and services, send "personal transactions" to and request personal transactions from friends and family, and buy, sell, and hold certain cryptocurrencies.

7. Data stored on PayPal is encrypted. To create and subsequently log into a PayPal account, a user must provide an email address, a phone number, and various pieces of personal information. They must also add one or multiple payment methods to their PayPal wallet. Users can link their debit card, credit card, and/or bank account.

8. Once payment methods are added to their PayPal account, users can transfer funds to and from their linked payment method. Any funds that are received are stored in the PayPal Balance Account unless and until the user transfers the funds away.

9. PayPal offers instant money transfers, which take thirty minutes or less and cost a small fee. PayPal also offers standard money transfers for free, and they take one to three days. PayPal users have the option to decline transfers from other users. PayPal users also have the option to attach messages to any funds sent or requested.

***MEGA***

10. MEGA is a cloud-based digital storage and file-hosting website based outside of the United States. An individual can access MEGA through the Internet via a web browser or

application installed on a compatible mobile device. Users can upload files to MEGA for the purpose of storing and/or backing up data, including image and video files. A MEGA user can organize data into file folders within the user's account.

11. Data stored on MEGA is encrypted. To create and subsequently log into a MEGA account, a user must provide an email address, which must be verified by MEGA, and a unique password. The user's email address functions as the user's MEGA username. The size of storage of a MEGA account varies depending on if the account is free or what level of storage the account holder has paid for.

12. A MEGA user can share files or folders in a MEGA account by creating and sharing a link. The share feature is embedded in MEGA and optional to all users. The MEGA user can choose to have the link password protected or not. Links can be created to share anything from one file to folders containing hundreds of thousands of files. Once a link to a MEGA folder is sent, the receiving party only needs an Internet connection to view the shared files.

13. MEGA informs users through its Terms of Service ("Terms") that it does not condone, authorize, support, or facilitate the storage or sharing of child pornography". Per its Terms, MEGA reserves the right to disable or remove such material, suspend or terminate the offending account, and disclose account details and other data to law enforcement as appropriate. MEGA is available to the general public for legitimate, non-criminal purposes, however, other investigations have revealed that some users traffic child pornography on MEGA by sharing hyperlinks to folders and files containing this material. Notably, MEGA's Terms also state that it may retain a user's files where it deems necessary for evidentiary purposes related to a breach of its Terms, or in connection with current or anticipated law enforcement action, and that release of such files to law enforcement is governed by MEGA's Takedown Guidance Policy.

***Encrypted Application A1***

14. ENCRYPTED APPLICATION A is a messaging application that is owned by a company located outside of the United States. An individual can access ENCRYPTED APPLICATION A through an application installed on a compatible computer or mobile device. ENCRYPTED APPLICATION A users can message and call other ENCRYPTED APPLICATION A users; can create group conversations; and send photographs, videos, and other files to other ENCRYPTED APPLICATION A users. ENCRYPTED APPLICATION A also provides end-to-end encryption and video calling, voice over Internet protocol, and file sharing, along with several other features. Users can choose to delete messages they have sent or received. Users can delete messages for their device and the device they were communicating with.

15. Users can join ENCRYPTED APPLICATION A by creating an account linked to a telephone number. Users can set up an account username which can be shared instead of telephone numbers. Up until the recent past, ENCRYPTED APPLICATION A did not provide records to law enforcement, making it an attractive application to use for those who commit crimes. Based on my training and experience, I know that ENCRYPTED APPLICATION A is a popular chatting platform for individuals who buy and sell child pornography.

***The National Center for Missing and Exploited Children ("NCMEC")***

16. NCMEC receives complaints concerning potential child exploitation via their CyberTipline from Internet Service Providers ("ISPs"), Electronic Service Providers ("ESPs"), and others. A NCMEC analyst reviews these CyberTipline reports and forwards them to law

1 I am aware of the name of Encrypted Application A. The name of the platform is redacted here to protect the viability of ongoing investigations.

enforcement for further investigation of the information provided in the CyberTipline report.

## PROBABLE CAUSE

17. In or around April 2025, DSS received information from PayPal about a large network of individuals in India (the "TARGET NETWORK") who were suspected of selling child pornography via social media and using PayPal to receive payments. Investigators identified these PayPal accounts based on several factors, which are discussed in further detail below:

a) The sellers primarily received personal payments from male, foreign buyers, sometimes with no notes or vague notes, and other times with notes explicitly indicating child pornography, such as "Little girls/kids", "Child/kids/girls only", "CP", and "Links CP";

b) Some of the buyers were previously convicted child pornography purchasers and/or registered sex offenders whose offenses included child victims;

c) Many of the seller accounts were linked to one another through a combination of names, addresses, email addresses, usernames, IP addresses, and similar activity;

d) The payment amounts were often in round U.S. dollar figures2; and

e) When PayPal asked some buyers for more information about the suspicious payments, the buyers provided identification in someone else's name (*i.e.*, a name other than the name associated with the PayPal account), or a non-responsive image, such as an unrelated image that is not identification.

2 Based on my training and experience, I've learned that CSAM is routinely offered for sale in round U.S. dollar amounts. I've also observed other investigations where price lists or "menus" for CSAM were listed in similar round dollar denominations.

18. Additionally, some buyers included notes with their payments that referred to buying links[3] via ENCRYPTED APPLICATION A and/or getting banned from ENCRYPTED APPLICATION A. For example, one note read, “Hey what is your [ENCRYPTED APPLICATION A] I could buy links I tried to find you, but I couldn’t.” Another stated, “Hey, what’s your [ENCRYPTED APPLICATION A] My account got banned.”

19. Other notes were more explicit, directly referencing child pornography with messages such as: “Links cp”, “Mom and son real incest”, “CP”, “Money for teen boys”, “Sending money for young Boys”, “Hey Aaron_Sweet_14 from here send me please 150GB for me a big mega link from boys”, and “Child/kids/girls only.”[4]

20. DSS investigated further and discovered that many of the accounts associated with the TARGET NETWORK appeared to be involved in the sale of child pornography based on reports from NCMEC, investigations of other individuals found to be in possession of child pornography who purchased from the TARGET NETWORK, and undercover purchases conducted by DSS Agents.

21. During this investigation, DSS identified BENJAMIN ANTHONY KRAMER as one such individual. The PayPal tip received in April 2025 revealed that a PayPal account ending in 7906, registered under the name Benjamin Kramer, was used to make a purchase from the TARGET NETWORK. The account was associated with the email address benkramer456@gmail.com, phone number +1 531-239-4420, and a registered address of 2401 S 18th St, Omaha, NE 68108 (SUBJECT PREMISES).

---

3 The term “buying links” refers to the primary method of CSAM distribution associated with the TARGET NETWORK, which is, upon payment, the provision of an encrypted MEGA link by which a buyer can access, view, and download CSAM.

4 These are abbreviations from messages sent via social media application Instagram.

For the reasons set forth below, there is probable cause to believe that KRAMER sent money to an account identified by law enforcement or by an ESP as having advertised child pornography for sale as described below in this Affidavit. Further, there is probable cause to believe that the payments to the TARGET NETWORK account were made in exchange for child pornography materials and that KRAMER duly received said child pornography.

22. On November 05, 2026, DSS agents, with the assistance of federal and local law enforcement, executed federal warrants authorizing them to search Benjamin A. Kramer ("KRAMER") and a residential address in Omaha, Nebraska for evidence fruits, and instrumentalities of violations of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

23. At approximately 0900 hours law enforcement located KRAMER at his residence at 2401 S 18th St, Omaha Nebraska. He was provided with a copy of the warrant for his person and residence and agreed to an interview.

24. Shortly after making entry, agents began the interview of KRAMER outside of his residence. Agents advised KRAMER of his rights pursuant to *Miranda* verbally. KRAMER indicated that he understood those rights, waived them verbally, and agreed to speak with agents. The interview was audio recorded; KRAMER's statements are summarized herein after rather than recounted verbatim unless indicated otherwise.

25. During the interview, KRAMER made the following disclosures:

26. He confirmed email benkramer456@gmail.com was an email belonging to him. He confirmed he previously maintained one or more PayPal accounts and used them to make purchases for child pornography.

27. He stated that he would find child pornography sellers on social media platform Instagram and would dialogue with sellers via DMs5; KRAMER stated that sometimes the conversation would remain in Instagram DMs and other times they would take it to ENCRYPTED APPLICATION A. He explained that the sellers would often send him a menu of available content and that the menu contained offers of child pornography of children of various age ranges. KRAMER stated he would ask for pre-teens, the sellers would then either send the images and videos via Instagram, or via links to Mega utilizing ENCRYPTED APPLICATION A.

28. KRAMER acknowledged that he purchased and received child pornography via ENCRYPTED APPLICATION A and Mega but stated that he would always delete the material after viewing them out of shame and guilt.

29. Law enforcement confronted KRAMER with information regarding an anticipatory search warrant which previously obtained child pornography from a Mega account associated with KRAMER's admitted email address: benkramer456@gmail.com. Law enforcement explained that they had reviewed child pornography received into that account as part of that warrant. KRAMER ultimately acknowledged purchasing child pornography and accessing it by clicking on the provided Mega links and viewing the videos and images on Mega.

30. When questioned about the username of the Mega account "Nidal Dyches" he stated "Nidal" was a childhood nickname for him and Dyches was a random name he came up with.

31. Records obtained from the New Zealand Law Enforcement, specifically the Digital Child Exploitation Team (DCET), note that the Mega account associated with

5 I know the term "DMs" to mean direct messages.

benkramer456@gmail.com contained approximately 82 child pornography files. Per DCET, these files were imported into KRAMER's account.

32. On or about August 31, 2026, a DSS Agent telephonically swore an anticipatory search warrant to MEGA before the Honorable Michale D. Nelson, U.S. Magistrate Judge of the District of Nebraska, for the ETD material contained within the benkramer456@gmail.com. On or about August 02, 2026, DSS Agents executed said warrant and numerous videos of apparent child pornography were obtained, including the following:

"NEW HOT best dad.mp4"

a. A 00:16:07 min video depicting a prepubescent boy, approximately 8-11 years of age, wearing a gray sweatshirt and is naked from the waist down. He has no pubic hair and underdeveloped features. The boy is laying on his back on a bed on a bed with pillows and partially attached fitted sheet. An adult male in a blue striped polo shirt, with visible gauge earrings and distinct hairstyle with shaved sides is lying on top of him. The two kiss before the adult performs oral sex on the child's erect penis. The adult male then performs anilingus on the child. The video progresses with the male performing anal sex on the child, and the child performing anal sex and anilingus on the male, among other sex acts.

"boy lovers.mp4"

b. A 00:01:35 min video depicting two nude, prepubescent boys of approximately 8-11 years of age, based on lack of pubic and body hair, and small, underdeveloped features. The children are both entirely nude and lying on a bed. The video begins with the pair kissing while one boy stimulates his own penis; as it progresses, the video pans down to focus on one of the boy's anuses while



SENSITIVE BUT UNCLASSIFIED

the other digitally penetrates it. The video also includes close and wide shots of the children engaged in anal sex.

"13yo & 8yo.mp4"

c. A 00:00:45 sec video depicting two male children, one of which is pubescent and approximately 13-14 years of age based on body size relative to the other child and the presence of some pubic hair. The other child is clearly prepubescent based on underdeveloped genitals, lack of pubic and body hair, and size relative to the other child. The video is largely shot from the waist down, with the face of the older child never depicted and the younger child's face only briefly shown and partially obscured by a pillow or cloth. The older child appears to be completely nude, while the younger boy is nude except for a red shirt. The older child anally penetrates the younger boy in numerous positions for the duration of the video. The video also has a watermark in the lower righthand corner reading in part "Kids Club" and redirecting to a specific website.

## CONCLUSION

33. I submit that this affidavit establishes probable cause to believe that BENJAMIN ANTHONY KRAMER violated 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (possession of or access with intent to view and attempted possession of or access with intent to view a visual depiction of a minor engaged in sexually explicit conduct).



SENSITIVE BUT UNCLASSIFIED

Respectfully Submitted,

______________________________
Barbara F. Robertson
Special Agent
Diplomatic Security Service

Subscribed and sworn to in accordance with Fed. R. Crim. P. 4.1 and 41(d)(3) by telephone or other reliable electronic means on the 5th day of November, 2026:

______________________________
HONORABLE RYAN C. CARSON
UNITED STATES MAGISTRATE JUDGE